UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHOICES WOMEN'S MEDICAL CENTER,
INC. and COMPREHENSIVE MEDICAL
CARE, P.C.,

          Plaintiffs,

    v.

RJS ASSOCIATES AND CONSULTANTS,
LLC and RICHARD SHERMAN,

          Defendants.

**MEMORANDUM AND ORDER**
18-CV-4013 (ILG)

GLASSER, Senior United States District Judge:

Plaintiffs brought this action against a consulting firm and its president for professional malpractice, breach of contract and contractual indemnification. (Am. Compl. ¶¶ 42–73). Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the breach and indemnification claims. (ECF No. 15). They do not move to dismiss the claim for professional malpractice.

For the reasons stated in this Memorandum and Order, the motion is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

Plaintiffs operate jointly as a women's health services provider ("Company"). (Am. Compl. ¶ 8). Defendant RJS Associates and Consultants, LLC ("RJS") is a financial consulting firm owned and operated by Defendant Richard Sherman. (*Id.* ¶¶ 9, 10). RJS serves small and midsize businesses by assuming the role of chief financial officer. (*Id.* ¶ 9).

On January 11, 2015, RJS and the Company entered into a consulting agreement. (ECF No. 19, "Consulting Agreement"). The Consulting Agreement required RJS to provide "on site

1

CFO consulting services" to the Company five days per week. (*Id.* § 4). RJS further agreed that Richard Sherman would personally perform those services for at least three of those days. (*Id.*). The remaining two days were to be filled either by Sherman or "a mutually agreed upon consultant of RJS." (*Id.*). "CFO consulting services" was defined by reference to an "attached job description," which listed the responsibilities of the Company's chief financial officer ("Job Description"). (*Id.* Recital A).

On October 17, 2017, RJS terminated the Consulting Agreement. (Am. Compl. ¶ 14). An investigation by the Company allegedly uncovered "numerous financial irregularities," and revealed that Defendants "failed to provide the services for which they were hired." (*Id.* ¶¶ 24, 25).

Plaintiffs filed suit in this Court on July 12, 2018. (ECF No. 1). The Amended Complaint asserts four causes of action: (1) professional malpractice[1] against both Defendants ("Claim I"); (2) breach of contract against Sherman, for failing to perform the CFO responsibilities listed in the Job Description ("Claim II"); (3) breach of contract against both Defendants, for violating the Consulting Agreement's nondisclosure clause ("Claim III"); and (4) contractual indemnification against both Defendants. ("Claim IV"). (Am. Compl. ¶¶ 42–73).

Defendants now move to dismiss Claims II, III and IV for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). (ECF No. 15). They do not move to

---

[1] To be precise, Plaintiffs' first claim is for "negligence and professional malpractice." (Am. Compl. ¶¶ 42 –48). Professional malpractice claims are frequently styled as such because, "[u]nder New York law, professional malpractice is a species of negligence." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000) (internal quotation marks and alteration omitted); *see also DeLollis v. Friedberg, Smith & Co., P.C.*, 933 F. Supp. 2d 354, 359 (D. Conn. 2013), *aff'd*, 600 F. App'x 792 (2d Cir. 2015); *Long Island Lighting Co. v. Gen. Elec. Co.*, 712 F. Supp. 292, 299 (E.D.N.Y. 1989); *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 Civ. 7907 (JFK)(HBP), 2019 WL 2498903, at *22 n.13 (S.D.N.Y. Mar. 6, 2019), *report and recommendation adopted in part, rejected in part on other grounds*, 2019 WL 1434311 (S.D.N.Y. Mar. 29, 2019).

dismiss Claim I. (*Id.*; *see also* Pl's. Opp'n 10). For the reasons that follow, the motion is granted in part and denied in part.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007).

However, the court need not accept factual allegations that are flatly contradicted by "documentary evidence" submitted with the complaint. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). In particular, "the interpretation of an unambiguous contract is a question of law for the court," and so "the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint." *Manhattan Motorcars, Inc.* v. *Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (citing *Taussig v. Clipper Grp., L.P.*, 13 A.D.3d 166, 167 (N.Y. App. Div. 2004)); *see also Ashcroft,* 556 U.S. at 678 (noting that courts "not bound to accept as true a legal conclusion couched as a factual allegation").

## DISCUSSION

### I. <u>Individual Liability of Richard Sherman</u>

Defendants move to dismiss Claims II, III and IV as to Sherman, on the ground that he was not a party to the Consulting Agreement. (Def's. Mem. 13–16). It is well settled under New York

3

law that "one who is not party to an agreement cannot be bound by it." *Valisa Mfg., LLC v. The 54 Grp., Ltd.*, 19 Misc. 3d 1136(A) (N.Y. Sup. Ct. 2008) (collecting cases).

By its express terms, the Consulting Agreement was entered into by RJS, Choices Women's Medical Center, Inc. and Comprehensive Medical Care, P.C. (Consulting Agreement Preamble). It did not identify Sherman as a party, impose any obligations on him,[2] or bear his signature in an individual capacity. However, Plaintiffs characterize the Job Description attached to the Consulting Agreement as an addendum signed by Sherman in his individual capacity. (Am. Compl. ¶ 13). They argue that this "addendum" made Sherman a party to the entire Consulting Agreement. (*Id.* ¶¶ 17, 62–73; Pl's. Opp'n 10, 11).

It is not obvious whether Sherman signed the Job Description in his individual capacity or as an officer of RJS. The signature block did not include a printed name or title. Furthermore, even if Sherman did sign it in his individual capacity, a contractual relationship still might not necessarily exist between him and the Plaintiffs.[3] But reading the Amended Complaint in a light most favorable to the Plaintiffs, it is plausible that discovery may uncover parol evidence supporting their interpretation of this document. *See Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 54 (2d Cir. 2010) (noting that "the interpretation of an ambiguous contract provision is a question for the finder of fact").

---

[2] The Consulting Agreement did specify that Sherman would provide on site coverage for at least three days per week. (Consulting Agreement § 4). However, this was unambiguously an obligation imposed on RJS to produce Sherman. It was not an obligation imposed directly on Sherman himself.

[3] For instance, Sherman signed the Job Description under a line stating "I have read and received a copy of my job description." (*Id.* at 7). Such language weighs against an intent to be bound, which is a fundamental requirement of contract formation in New York. *See Meloni v. RGM Distribution, Inc.*, 201 F. Supp. 3d 360, 370 (E.D.N.Y. 2016).

Dismissal of Claim II, which alleges that Sherman failed to satisfy the responsibilities outlined in the Job Description, would therefore not be proper at this time. (*See* Am. Compl. ¶¶ 56–60).

However, even if Sherman signed the Job Description in his individual capacity, it does not follow that this made him a party to the entire Consulting Agreement. Indeed, nothing in the Job Description suggests that it had such an effect. Sherman therefore cannot plausibly be bound by the Consulting Agreement's nondisclosure and indemnification provisions. (*See Id.* ¶¶ 62–73). Claims III and IV, which are based on those respective provisions, are therefore dismissed as to Sherman.

Plaintiffs also argue, in the alternative, that Sherman is liable for the contract claims under a theory of veil piercing. (Pl's. Opp'n 11–12). However, "it is well settled that New York courts are reluctant to disregard the corporate entity." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) (collecting cases). "The party seeking to pierce the corporate veil must establish that the owners, through their domination [of the entity], abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142 (1993). In applying this standard, courts "look to a variety of factors, including the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 18 (2d Cir.1996); *see also Waters*, 890 F.2d at 600 (collecting cases). The Amended Complaint alleges nothing of the sort, and so this theory of relief cannot be entertained.

## II. Redundancy of the Contract Claims

Defendants also move to dismiss Claims II, III and IV as redundant of the professional malpractice claim. (Def's. Mem. 17–21; Def's. Reply 2–6). Under New York Law, a "claim for breach of contract is properly dismissed as redundant of a malpractice claim" if it rests solely upon the "defendant's alleged breach of professional standards."[4] *Diamond v. Sokol*, 468 F. Supp. 2d 626, 640 (S.D.N.Y. 2006); *see also Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 14 (N.Y. App. Div. 2008) (collecting cases); *Town of Kinderhook v. Vona*, 136 A.D.3d 1202, 1205 (N.Y. App. Div. 2016) (finding a contract claim duplicative of an accountant malpractice claim because the accountant had not agreed to do anything beyond performing ordinary professional obligations).

The Court must therefore first determine what would constitute a "breach of professional standards." *Diamond*, 468 F. Supp. 2d at 640. However, any such determination would not be proper at the motion to dismiss stage, because "[e]xpert testimony . . . is required to establish the relevant professional standard of care." *Martuscello v. Jensen*, 134 A.D.3d 4, 12 (N.Y. App. Div. 2015); *see also Jack Hall Plumbing & Heating, Inc. v. Duffy*, 100 A.D.3d 1082, 1083 (N.Y. App. Div. 2012). Defendants' motion to dismiss the contract claims as redundant of the professional malpractice claim is therefore denied as premature.

## III. Indemnification

Claim IV seeks indemnification pursuant to the Section 5 of the Consulting Agreement. (Am. Compl. ¶¶ 68–73). Section 5 of the Consulting Agreement provided, in relevant part:

---

[4] In other words, "even if a plaintiff alleges a breach of an express contractual promise," that contract claim must be dismissed "as long as the defendant is a professional who would be expected to accomplish the promised action by using due care even in the absence of the contractual obligation." *Panteleone v. Envtl. Eng'g & Contracting*, No. 12-CV-5415 JG, 2013 WL 3340483, at *3 (E.D.N.Y. July 2, 2013).

> [The Company] and RJS shall indemnify, defend and hold harmless the other party . . . against all actions, claims, demands, liabilities, losses, damages, costs, and expenses (including reasonable attorneys' fees) (collectively, "Losses") to the extent resulting, directly or indirectly, out of (i) an actual or alleged injury to a person, company or property as a result of the negligent or intentional act or omission of [the Company] or RJS; or (ii) a breach by [the Company] or RJS of any of its obligations under this Agreement. . . . [The Company] or RJS shall give the other party prompt notice of any claim for indemnification hereunder and shall allow [the Company] or RJS to control the defense or settlement of such claim and cooperate with [the Company] or RJS in all matters related thereto.

(Consulting Agreement § 5). Defendants argue, and the Court agrees, that Claim IV must be dismissed because the parties only agreed to indemnify each other against third party claims. (Def's. Mem. 21; Def's. Reply 12–18).

Because attorneys' fees are expressly included among the "Losses" covered by the indemnification clause, the law provides clear instruction on this issue. New York follows the American Rule, under which attorneys' fees "are not ordinarily recoverable." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004); *Durante Bros. Const. Corp. v. Coll. Point Sports Ass'n, Inc.*, 207 A.D.2d 379, 380 (N.Y. App. Div. 1994). A court "should not infer a party's intention to waive the benefit of the [American Rule] unless the intention to do so is unmistakably clear from the language of the promise." *E*Trade Fin. Corp. v. Deutsche Bank AG*, 374 F. App'x 119, 123 (2d Cir. 2010) (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492 (1989)).

New York courts will not find an unmistakably clear intent to waive the American Rule where the "indemnification agreement contains provisions that appear to be inapplicable to suits between the contracting parties," such as "requiring that notice of a claim be given to the indemnitor." *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 341 (S.D.N.Y. 2012) (collecting cases). Indeed, the indemnification clause in this dispute was accompanied by such a notice of claim

requirement (*see* Consulting Agreement § 5). Accordingly, the parties did not waive the American Rule with "unmistakable clarity."

Even if Plaintiffs seek indemnification for something other than attorneys' fees, Claim IV must still be dismissed on this ground. The inclusion of "attorneys' fees" as one of the many kinds of covered "Losses" controls the interpretation of the entire indemnification clause. (Consulting Agreement § 5). Either the indemnification clause covers intra-party claims, or it does not. To hold otherwise would require this Court to adopt two conflicting interpretations of the same contractual provision, depending on the sort of "Losses" Plaintiffs seek to recover. *See Scott-Macon Sec., Inc. v. Zoltek Companies, Inc.*, No. 06-2711CV, 2007 WL 2914873, at *6 (2d Cir. Oct. 4, 2007) (noting that under New York law, "indemnity contracts must be 'strictly construed' to avoid reading in duties which the parties did not intend") (citing *Hooper*, 74 N.Y.2d at 491). Claim IV is therefore dismissed in its entirety.

## CONCLUSION

Defendants' motion to dismiss is GRANTED as to both Defendants with respect to Claim IV, and as to Defendant Sherman with respect to Claim III. The motion is DENIED in all other respects.

SO ORDERED.

Dated: Brooklyn, New York
July 10, 2020

/s/
I. Leo Glasser                    U.S.D.J.